LIZZIE GORDON, Respondent, *v.* MAX KRELLMAN, Appellant, Impleaded with WILLIAM M. HOPPIN, as Trustee in Bankruptcy of the Estate of MAX KRELLMAN, and Others, Defendants.

First Department, January 18, 1924.

Mortgages — action by mortgagee in possession to account and to have property sold — defendant interposed counterclaim — reference was ordered to hear and determine account with respect to both plaintiff's and defendant's claim and provided that trial of other issues be deferred until referee's report was made — defendant insisted that reference was to hear and determine but objects to final judgment without confirmation of referee's report — defendant cannot complain — procedure not approved — error for referee to refuse to open reference and to hear witness to contradict testimony by plaintiff's assignor — denial of application to court to reopen does not conclude defendant — agreement between defendant and plaintiff's assignor allowed plaintiff two per cent on amount due as compensation — plaintiff not entitled to ten per cent after expiration of agreement — accounting to date of trial before referee — plaintiff entitled, after expiration of agreement, to charge for care of property as provided in agreement — plaintiff entitled to charge for repairs and other items — retrial at Special Term.

In an action by a mortgagee in possession seeking to account and to have the property sold, subject to prior liens, for the satisfaction of the debt, in which the defendant interposed a counterclaim, it seems, that the defendant cannot object to the entry of final judgment upon the report of a referee, without the confirmation of the referee's report on the minutes of the hearings or trial before him, where it appears that the interlocutory judgment ordered a reference to hear and determine the account with respect to the claims of the plaintiff and the defendant, and directed that the trial of all other issues be deferred until the incoming of the referee's report, and that the defendant insisted, before the referee, that the reference was one to hear and determine the issues joined in the action. The procedure, however, is not approved.

It appearing that as to several items of the account in reference to which the plaintiff's assignor testified, a tenant was in a position to corroborate plaintiff's assignor, and that that tenant was not produced by the plaintiff who, in fact, stated that she could not locate him, it was error for the referee to refuse to reopen the reference on application by the defendant for the purpose of receiving testimony by said tenant who was produced by the defendant and who would contradict the plaintiff's assignor.

An application directed to the court for the same purpose which was denied on technical grounds and without considering the merits does not conclude the defendant on this point.

The plaintiff, who under the agreement between her assignor and the defendant was entitled to two per cent per year on the amount due as compensation for services in caring for the property and collecting the rents, was not entitled, after the expiration of the agreement, to charge more than that amount.

The plaintiff, as the mortgagee in possession, was entitled to charge for substantial repairs which she made and for other items that were necessary to keep the premises in condition as an income-producing property.

It was proper to take the account down to the time of the trial before the referee and not limit it to a period prior to the interlocutory judgment.

The case should be retried at Special Term, both as to the accounting and the counterclaim.

APPEAL by the defendant, Max Krellman, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 13th day of December, 1922, upon the report of a referee to hear and determine, appointed by an interlocutory judgment in an action to foreclose a mortgage, directing the sale of the premises described in the complaint, with notice of intention to bring up for review the interlocutory judgment, the order directing its entry and the report of the referee.

*Diamond, Abrahams & Strauss* [*Jerome A. Strauss* of counsel], for the appellant.

*Glaze & Fine* [*George W. Glaze* of counsel], for the respondent.

MARTIN, J.:

Plaintiff commenced this action in September, 1921, as a mortgagee in possession of real property, seeking to account, to have the amount of defendant's debt determined, to have the property sold, subject to prior liens, for the satisfaction of the debt, and to enter a judgment for any deficiency.

Defendant Max Krellman, hereinafter called the defendant, served an answer containing denials and a counterclaim based on alleged mismanagement of the property. It demanded judgment that the complaint be dismissed, that the various agreements between the parties be canceled of record, that plaintiff be directed to reconvey the property to defendant, and that defendant have judgment for the sum of $15,000 damages.

A reply was served, and thereafter the plaintiff moved for an order striking out the denials in the answer as frivolous, and for an interlocutory judgment upon the pleadings, granting her leave to account, appointing a referee to take and state the account, and directing that the trial be deferred as to other issues until the filing of the referee's report.

On January 25, 1922, plaintiff was granted an order striking out the denials as frivolous, directing that plaintiff have judgment upon the pleadings herein, authorizing and permitting her to account, as prayed in the complaint, and ordering a reference to hear and determine the account " with respect not only to the claim of the plaintiff, but also with respect to the counterclaim of defendant Max Krellman; and that the trial of all other issues be deferred until the incoming of the report of said referee."

On its face this order seems somewhat inconsistent in that it

contemplates a trial of issues after the disposition of the matter before a referee appointed to hear and determine. This inconsistency continues in the interlocutory judgment and in the decision upon which it is based, both providing for the reference to hear and determine, and that the award of costs and allowances be deferred until the application for final judgment. When the referee made his report, an application was made and granted at Special Term for the entry of judgment of foreclosure and sale on the report of the referee, the order being made by the same justice who had granted the application for judgment on the pleadings, and being made over defendant's objection that such final judgment could not be entered without confirming the referee's report on the minutes of the hearings or trial before him.

After the entry of the interlocutory judgment, plaintiff filed an account, and hearings were brought on before the referee. At the first of these defendant took the position that plaintiff should first present her case, and that then the evidence relating to the issues arising out of the counterclaim and reply thereto should be presented. Though plaintiff's application before the court had not been for a reference to hear and determine, and related particularly to the accounting, it appears that defendant suggested a reference to hear and determine the issues joined by the reply to the counterclaim and persisted in that position before the referee.

After the completion of the reference, however, defendant insisted that judgment could not be entered on the theory that the referee had been appointed to hear and determine, and now contends that there was no authority for such a reference, that the proceedings were irregular, and that the judgment should be reversed on this ground alone. The course taken seems to have been due to the suggestion of defendant. It was not feasible for the referee to hear and determine the issues joined by the reply without, at the same time, hearing and determining the issues arising out of the account and the objections. The plaintiff was accounting for rents less proper deductions, whereas the burden of the counterclaim is that the amount which plaintiff received and for which she should account would have been much greater were it not for her alleged mismanagement of the property. Defendant's position based on the counterclaim was that there should have been rents received sufficient to pay the indebtedness and leave a large balance over for defendant. Both the complaint and the counterclaim are directed toward the account, plaintiff asserting a balance in her favor, and defendant that the balance is in his favor.

For the procedure as to which he now complains, the defendant is responsible. He continued with the reference without objecting to its form, his counsel suggesting the order and the scope of the proof of the parties. Were it not that we have concluded that there must be a reversal on other grounds, we would consider as well founded respondent's argument that the defendant should not be heard to complain of the procedure which followed from his suggestion and which was acquiesced in by all the parties, though we are not giving it our approval.

We are of the opinion that errors in the account itself, which it is not practicable to cure in this court, in the refusal of the referee to reopen the hearings for the presentation of the testimony of one Rosencranz, as well as in rulings against defendant in relation to the admission of testimony, require that there should be a retrial.

When the property was deeded to plaintiff's husband, the original mortgagee, there was a lease held by Rosencranz. On its expiration a lease was made to one Goldfus, and, on the expiration of his lease, Rosencranz took another lease. Rosencranz was in a position to corroborate the testimony of plaintiff with respect to a number of items which were allowed to plaintiff in the accounting. Reference may be made to one item which, though it is small in amount, is nevertheless illustrative of the character of the testimony Rosencranz might have been able to give. It relates to an item of ten dollars periodically received for a sign privilege. This item was first referred to on cross-examination of Phineas Gordon, plaintiff's assignor, when he was asked whether he received it and admitted that he had. Nevertheless, when asked for an explanation for omitting it from the account, he indicated that he had paid it, as received from time to time, to Rosencranz. Here was an item which plaintiff had not included in the account, and which was first referred to on behalf of defendant. Gordon took refuge in the statement that he had orally agreed to allow this to Rosencranz. At the last hearing at which testimony was taken before the referee, which seems to have been held on June 13, 1922, *Gordon testified* that he did not know where Rosencranz was, and that he had not been able to find him. At this hearing the parties were given until June twenty-sixth to exchange briefs, and until July first to file briefs in reply. The record shows that on July seventh the referee had the parties appear before him on a motion to reopen the hearings. It does not appear when this application was first made. Three and a half weeks before Gordon had asserted that he was not able to find Rosencranz, but at this hearing on July seventh defendant's counsel had Rosencranz and another

witness, a tenant of a store, present. On behalf of defendant, their testimony was then offered as to several points and particularly to contradict the testimony of Gordon as to various matters and for the purpose of discrediting Gordon as a witness. Rosencranz was the one person who was in a position to know the truth as to much of Gordon's testimony. The referee ruled, however, that the affidavit of Rosencranz, apparently filed on the application to reopen the hearings, but which does not appear in the record here, did not disclose any matter of sufficient importance to justify a reopening of the hearing, ruling that only one item, a certain " bonus," was " of any vital interest," and that no further testimony should be taken with reference to that item for the reason that plaintiff's counsel consented to have it charged against plaintiff. This ruling was made in the face of an assertion from defendant's counsel that the concession as to the bonus was made in order to avoid the introduction of testimony which would show " a clear state of perjury " and bad faith on the part of plaintiff.

In our opinion the referee should have heard these witnesses and should have opened the reference and continued the hearings for that purpose.

After this motion was denied before the referee, an application directed to the same end was brought on before the court, but it was denied on technical grounds and without considering it on the merits. Its denial by the court in no way concludes defendant on this point.

Defendant raises objections to a number of items which have been allowed against him in plaintiff's accounting. The most important of these is the allowance made to plaintiff for services in collecting the rents and managing the property. Plaintiff's assignor, defendant's original creditor, did this work himself. After the property was conveyed to plaintiff's assignor there was a written agreement made between defendant and his creditor, plaintiff's husband and assignor. This agreement is dated August 27, 1913. It states a total indebtedness of $5,803.66 due from defendant Krellman to plaintiff's husband, and it provides that the creditor shall hold and keep the property for a period of three years from the date of the agreement, collecting the rents and proceeds and maintaining the property " in a good condition of repair; " that he shall make certain payments on the first mortgage, " shall pay the upkeep and carrying charges of the said property, including taxes, repairs, interest, insurance and such other charges as are necessary for the maintenance of the said house; " that Gordon shall apply the balance on account of the indebtedness of the defendant to him; that there shall be semi-annual statements;

that defendant may sell the property, paying the balance due to Gordon; that defendant shall be entitled to a reconveyance at the end of the three-year term of the agreement upon payment of the sum then due to Gordon; and that if at the end of said period the property was not sold or the indebtedness not paid " then, and in that event, the said Phineas Gordon shall become the absolute owner of the foregoing property, without equity of redemption on the part of the said Krellman, and without any lien or right of reconveyance at any other time." There is also a provision that Krellman then will, if Gordon desires it, execute and deliver a quitclaim deed to Gordon, and that " the said Gordon agrees that the property then is accepted by him in full discharge and payment of the foregoing indebtedness." It was also provided that Gordon should be credited with interest at six per cent, calculated semi-annually on the amount due from time to time and " in addition, *two (2%) per cent* upon the foregoing sum, or any part thereof that may remain due and unpaid at any time during the foregoing period, as and for the compensation to the said Gordon for the care and maintenance of the said property."

Although the agreement provided for semi-annual statements, none were made. No statement of any kind was made until the year 1916, when defendant found himself in bankruptcy, and the trustee of his estate began an action against plaintiff and her assignor for an accounting. The matter was sent to a referee who took and stated the account, finding that Krellman was indebted to Gordon in the sum of $6,175.44 on February 27, 1916. The complaint of the trustee in bankruptcy was dismissed, and the property was apparently abandoned to the bankrupt by the trustee. The accounting before that referee is the starting point of the accounting involved in this case. In reaching the amount thus stated as the indebtedness on February 27, 1916, the referee on the former accounting allowed compensation to the mortgagee and his assignee, the plaintiff, for collecting the rents and looking after the property at the rate of one per cent every six months. This was entirely in accordance with the provisions of the contract.

On the accounting in the case now before us plaintiff was allowed such compensation at the same rate up to the time of the expiration of the stated three-year term of the original agreement in accordance with which the property was turned over to plaintiff's husband. Thereafter plaintiff was allowed such compensation at the rate of five per cent calculated semi-annually on the balance of the indebtedness as it was found to be at the end of each semi-annual period. This was ten per cent per year, and it was not calculated upon the amount of rents collected, but upon the amount of the

indebtedness. Plaintiff had testified to the effect that five per cent would be a reasonable compensation, and that a real estate man had refused to take it for less; but clearly this testimony as to five per cent was intended to mean five per cent of the rents collected. The compensation allowed in the accounting proceeding cannot be sustained on any theory.

A reasonable compensation to be paid to a real estate agent might be five per cent of the amount of rents collected, but we believe the basis of compensation here should be that provided for in said agreement, and that the agreement set forth the amount of compensation intended by all the parties to be paid for the services rendered.

There is no serious contention that up to the time of the expiration of the term of the agreement referred to, plaintiff was entitled, pursuant to the contract, to charge compensation on the basis of one per cent of the balance due, calculated semi-annually. But appellant very urgently contends that thereafter no allowance should be made to plaintiff for collecting the rents and the management of the property, citing authorities which hold that a mortgagee in possession for his own benefit is not entitled to be paid for collecting rents and managing the property.

In *Green* v. *Lamb* (24 Hun, 87, 90), LEARNED, P. J., discussing the question of compensation there referred to as " commissions," said: " On the whole, we are of opinion that no fixed rule should be laid down, which would apply to every case where there is the legal relation existing between mortgagee in possession and owner. The circumstances which cause the relation may differ widely, and may make different rules as to commissions just and proper."

In *Blunt* v. *Syms* (40 Hun, 566) the General Term (First Department) said (at p. 567): " While a trustee, and also a mortgagee, is to be reimbursed for all his expenditures lawfully made on account of the estate, his own services have been regarded as gratuitously bestowed, and where he is in fact a mortgagee, for his own benefit. And such may be considered to have been the expectation of these parties, inasmuch as no stipulation was made or intimation was given that a compensation or commission upon these subjects for the personal services of the defendant would be at any time claimed by him."

In the present case there was originally a stipulation for compensation, and it is not entirely accurate to say that plaintiff's assignor was in possession solely for his own benefit. Under the agreement he was to make payments on the first mortgage, and could apply on his own claim only the balance of income which remained after the payment of all charges and expenses. Moreover,

he took possession of the property under an agreement by which he was to be compensated on a stated basis for his work. The present position of all parties is consonant with a holding that he or his wife continued in possession pursuant to the terms of the agreement, so far as the question of compensation for his services is concerned. It does seem to appear that, while eventually the mortgage was foreclosed, plaintiff at one time considered. herself to be the absolute owner pursuant to the agreement. Nevertheless that position was abandoned when plaintiff brought this action. Defendant's position is that plaintiff remained a mortgagee in possession. This is consistent with the law applicable to the situation, and with the attitude of the parties that after the expiration of the stated term of three years, plaintiff continued to be entitled to charge for the management of the property on the basis provided in the agreement.

In 27 Cyc. (at p. 1846) it is said: " It is the generally accepted rule that the mortgagee cannot be allowed or credited with any sum as compensation for his own personal time or trouble in managing and renting the property and collecting the income, unless in pursuance of a previous agreement of the parties reasonable in its terms and fairly made. But in a few States such compensation, to a reasonable amount, is regarded as a fair and proper allowance to the mortgagee."

In volume 2 of Jones on Mortgages (7th ed. § 1132) it is said: " A mortgagee in possession is not entitled to compensation for his own trouble in taking care of the estate and renting it, although there is an agreement between him and the mortgagor that he shall have such compensation. The reason given for this rule is, that to allow such compensation would tend directly to facilitate usury and oppression. And moreover the care he bestows is for the furtherance and protection of his own interests, being not an agent, but for the time, as it were, the owner. But he may charge for the services of an agent employed by him to collect rents, when a prudent owner acting for himself would probably have done so. If a mortgagor agrees and consents, with a knowledge of all the facts and circumstances, to disbursements made by the mortgagee in possession, these are to be deemed reasonable and must be reimbursed; and the fact that the mortgagor or his agent agreed to the employment by the mortgagee for a time of a person to take charge of the mortgaged estate, at a certain rate of compensation, is competent, though not conclusive evidence that the same compensation should be allowed during the residue of the term of the mortgagee's possession. It may be noticed in this connection that in the early cases a mortgagee in possession was regarded

as a trustee, who was not then entitled to commissions. This rule has been changed as regards trustees, and there is no reason why it should be retained as regards mortgagees in possession. The tendency in recent cases is evidently in the direction of a change in this rule."

In the following section it is pointed out that in Massachusetts a mortgagee in possession is allowed compensation for the management of the property, the usual rate being five per cent of the rents collected; and that a similar practice obtains in Connecticut.

We find no authoritative cases requiring us to hold that it is the law that a mortgagee in possession may not receive compensation for the management of the property where he originally took it over under an agreement which provided for such compensation.

Another point as to the accounting, made by appellant, relates to sums charged and allowed for repairs. In this connection appellant principally urges that Rosencranz and others holding written leases were bound to make repairs, and that, therefore, these repairs should not have been made by or for the account of the owner.

In relation to some of the charges for repairs or replacements, Gordon testified that she agreed to pay for them in order to induce Rosencranz to take another lease of the property. To this end she says she agreed to repaint the halls and to make what she refers to as " stationary " repairs, by which she means replacements. In this category she puts such items as the furnishing of new stoves for tenants and other items which might not be expected to substantially deteriorate each year.

The premises were held as an income-producing property. It was necessary to keep them in good repair to produce the income, and to the same end it was necessary to secure tenants on advantageous terms. Therefore, we believe that plaintiff was rightly credited with all amounts in the nature of current renovation and repairs necessary for the upkeep of the property, as well as those made to secure tenants. Furthermore, the agreement under which Phineas Gordon took over the property provides " that he shall pay the upkeep and carrying charges of the said property, including taxes, repairs, interest, insurance and such other charges as are necessary for the maintenance of the said house." In respect to these matters, as well as in relation to compensation for management, we think that the possession of the plaintiff continued after the term of the agreement to be on the same basis as is stated in the instrument.

Another item allowed by the referee and to which appellant

objects, covers the cost of replacing a show window as well as some electrical connections, all of which were damaged by an automobile crashing into the front of the building. In our opinion these charges were properly allowed. Plaintiff's assignor testified as to the futility of attempting to collect from the owner of the automobile or other person responsible for the damage caused by the collision. This was not an item for which plaintiff was responsible, but arose in the course of events. There is no satisfactory proof that the tenant could have been made to pay for repairing the damage. On the other hand, it had to be repaired in the general course of upkeep and operating the property for the purpose of producing an income from the rents.

Objection is also taken by appellant to a charge of $320 per year, during a period of three years, paid to the first mortgagee in consideration of allowing the mortgage to remain. Plaintiff's assignor testified that he was unable to secure a mortgage for a like sum during said three years. Under the circumstances so far as it appears from the record, this was a necessary expenditure. Furthermore, if the first mortgage had been replaced, similar expenditures would have been required. If he had not secured the consent of the first mortgagee to the continuance of the mortgage, it is fair to assume that the entire purpose of turning over the property would have been thenceforth defeated, and that defendant would have lost all further chance of having his debt paid out of the income derived from the property. This was a charge contemplated by the agreement " as * * * necessary for the maintenance of the said house," and it was necessary as well for the continuance of the interest of defendant. It was properly allowed.

Appellant appears to argue also that the account before the referee should not have been taken to a period subsequent to the interlocutory judgment, whereas it was taken down to the time of the trial before the referee. No objection seems to have been made on this ground before the referee, and we do not think the objection would be a valid one in any event. The course most advantageous to every one was to have the account brought down to the latest convenient date.

Other items allowed by the referee and objected to by defendant were the charges made for services of the attorney for plaintiff here in the action brought by the trustee and amounts paid the stenographer in the action brought by the trustee, though defendant conceded that the amounts were reasonable. That suit was brought in the right of defendant by the successor to his title, his trustee in bankruptcy, and we regard the disbursements necessarily entailed

as a charge caused by defendant; so that we, therefore, believe that this objection is not well taken.

We also consider that the agreement contemplated the insurance items charged and the items of repairs which became necessary in order to secure or keep insurance, and that in this respect the possession continued as it had under the agreement. Several other items which are objected to were properly allowed for the reason that they are in the nature of upkeep and maintenance charges of a character referred to above. This reasoning also applies to replacements in the hot water heating system and other equipment which were damaged by freezing in the severe winter of 1917–1918, as well as to replacements required by what appears to have been a breaking down, from long use, of the connection for water service with the city main, to repairs in the sidewalk, and to items paid for repairing plastering.

In view of the nature of the counterclaim we think the case should be retried at Special Term, both as to the accounting and the counterclaim.

The judgment of foreclosure and sale, entered on the referee's report, should be reversed, and the order on the motion originally noticed for January 25, 1922, as well as the interlocutory judgment and the decision on which said judgment is based, should be modified and resettled in accordance with this opinion, to the end that all issues may be tried at Special Term and the action proceed to judgment in regular course. The interlocutory judgment and the decision on which it is based should also be modified to conform to the foregoing in so far as they refer to the agreement of August 27, 1913.

CLARKE, P. J., SMITH, MERRELL and FINCH, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. Settle order on notice.